FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 05, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CODY C.,[1] | No. 2:25-CV-00177-MKD |
| Plaintiff, | ORDER REVERSING THE COMMISSIONER'S DECISION |
| v. | **ECF Nos. 10, 18** |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Before the Court are the parties' briefs.  ECF Nos. 10, 18.  D. James Tree represents Plaintiff.  Special Assistant United States Attorney Sara Moum represents Defendant.  The Court, having reviewed the administrative record and

---

[1] To protect the privacy of plaintiffs in social security cases, the Court identifies them by only their first names and the initial of their last names.  *See* LCivR 5.2(c).

25cv177

ORDER - 1

the parties' briefing, is fully informed.  For the reasons discussed below, the Court reverses the Commissioner's decision and remands the case for additional administrative proceeding pursuant to sentence four of 42 U.S.C. § 405(g).

**JURISDICTION**

Plaintiff filed an application for Title XVI supplemental security income benefits on July 9, 2020, alleging disability beginning February 15, 2019.[2]  Tr. 407, 414-22.  The application was denied initially and upon reconsideration.  Tr. 177-96, 198-206.  An Administrative Law Judge (ALJ) held a hearing on July 7, 2022, Tr. 68-103, and issued an unfavorable decision on July 27, 2022.  Tr. 208-32.  The Appeals Council remanded the matter on September 13, 2023.  Tr. 233-40.  The ALJ held a second hearing on February 27, 2024, Tr. 104-17, and issued an unfavorable decision on April 12, 2024.  Tr. 14-54.  The Appeals Council denied review on March 31, 2025.  Tr. 1-6.  Plaintiff appealed this final decision on May 27, 2025.  ECF No. 1.

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

---

[2] Plaintiff previously filed applications for Title II and Title XVI benefits in 2017. The Court affirmed the denial of those applications on January 15, 2021.  Tr. 143-75.

ORDER - 2

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citations omitted).  "Substantial evidence" means "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation marks and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation marks and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a) (citation omitted).  Further, a district court "may not reverse an ALJ's decision on account

ORDER - 3

of an error that is harmless." *Id*. (citation omitted).  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation marks and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

ORDER - 4

gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

ORDER - 5

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

ORDER - 6

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### ALJ'S FINDINGS

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 9, 2020, the application date. Tr. 21.

At step two, the ALJ found that Plaintiff had the following severe impairments: personality disorder; schizoaffective disorder; substance addiction; and anxiety. Tr. 21.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 22.

The ALJ then concluded that Plaintiff had the RFC to perform a full range of work with the following non-exertional limitations: Plaintiff "can perform simple, routine, repetitive tasks with no contact with the general public and brief and superficial interaction with co-workers or supervisors." Tr. 28.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 45. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that

ORDER - 7

existed in significant numbers in the national economy that Plaintiff could perform, to include food sorter, tagger, and small parts assembler.  Tr. 45-46.

Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the application date through the date of the decision.  Tr. 46-47.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying his supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ properly evaluated Plaintiff's symptom claims;

3. Whether the ALJ erred at step two; and

4. Whether the ALJ erred at step five.

ECF No. 10 at 2.

## DISCUSSION

**A. Medical Opinion Evidence**

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.

ORDER - 8

The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).

The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a

ORDER - 9

> medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2) (emphases added).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Ninth Circuit addressed the issue of whether the changes to the regulations displace the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies.  *Id.*  The Court reasoned the "relationship

ORDER - 10

factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* at 792. However, the ALJ is not required to make specific findings regarding the relationship factors. *Id.* Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id.*

Plaintiff argues the ALJ improperly assessed four sets of medical opinions. ECF No. 10 at 16-20.

*1. Dr. Genthe*

Dr. Genthe examined Plaintiff twice—first on June 17, 2019, and again on March 15, 2023. Tr. 615-22, 1289-96. In 2019, Dr. Genthe assessed, among other things, a series of moderate and marked limitations and rated Plaintiff's overall severity level as "marked." Tr. 619. In 2023, Dr. Genthe assessed, among other things, a series of marked and severe limitations and rated Plaintiff's overall severity level as "severe." Tr. 1293. The ALJ found both opinions unpersuasive. Tr. 34-36.

ORDER - 11

The ALJ first discounted the opinions as internally inconsistent.  Tr. 34 ("The first problem is that his findings did not support his opinion); Tr. 35 (same).  This finding is legally sound, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ may discount a doctor's opinion when it is inconsistent with or unsupported by the doctor's own clinical findings), and substantial evidence supports it, *see* Tr. 621-22 (2019 mental status examination assessing Plaintiff's orientation, perception, memory, concentration, and abstract thought as within normal limits); Tr. 1295-96 (2023 mental status examination assessing Plaintiff's orientation and fund of knowledge within normal limits and describing Plaintiff as "generally open, cooperative, and friendly" and "appear[ing] attentive").  The ALJ reasonably found the doctor's assessments conflicted with his stated opinions.

The ALJ also discounted Dr. Genthe's opinions as inconsistent with the record.  Tr. 35-36.  This finding is legally sound, *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may reasonably reject doctors' opinions when they are inconsistent with or contradicted by the medical evidence), and substantial evidence supports it, *see, e.g.*, Tr. 1084 (April 2, 2021, mental status examination assessing Plaintiff's thought process and content, orientation, perception, fund of knowledge, abstract thought, and insight and judgment as within normal limits); Tr. 1171 (November 1, 2021, mental status examination assessing Plaintiff's thought associations as unremarkable and

ORDER - 12

cognition as "[o]riented in all spheres"); Tr. 1340 (September 27, 2022, treatment note indicating Plaintiff is doing "fine" and reports "hand[ling] stressful things a lot better now" and not "freak[ing] out"); Tr. 1355 (October 25, 2022, treatment note indicating Plaintiff stating, "I'm in the zone with my video game so I can only talk briefly," and reporting "instability improved since resumption of meds").

*2. Dr. Morgan*

Dr. Morgan examined Plaintiff on April 2, 2021, and opined, among other things, Plaintiff had a series of moderate and marked limitations and assessed Plaintiff's severity level as marked. Tr. 1082. The ALJ found Dr. Morgan's opinion partially persuasive. Tr. 37.

The ALJ first discounted Dr. Morgan's opinion as inconsistent with his examination findings. Tr. 37. As noted above, this finding is legally sound, *see Tommasetti*, 533 F.3d at 1041, and substantial evidence supports it, *see* Tr. 1084 (mental status examination assessing Plaintiff's thought process and content, orientation, perception, fund of knowledge, abstract thought, and insight and judgment as within normal limits).

The ALJ also discounted Dr. Morgan's opinion as inconsistent with the record. Tr. 37. For the reasons described above, in the context of Dr. Genthe's opinion, the ALJ did not err by discounting Dr. Morgan's opinion on this ground.

ORDER - 13

### 3. Ms. Gonzalez

Ms. Gonzalez, Plaintiff's treating therapist, provided a mental source statement on November 14, 2023, opining, among other things, that Plaintiff had a series of severe and marked limitations and that Plaintiff would be off-task at least 30% of the time and would miss at least four days of work per month if attempting to work a 40-hour work schedule. Tr. 1285-87. The ALJ found the opinion not persuasive. Tr. 37-39.

The ALJ first discounted the opinion as inconsistent with Ms. Gonzalez's clinical findings. Tr. 38. As noted above, this finding is legally sound, *see Tommasetti*, 533 F.3d at 1041, and substantial evidence supports it, *see, e.g.*, Tr. 1340 (September 27, 2022, treatment note indicating Plaintiff is doing "fine" and reports "hand[ling] stressful things a lot better now" and not "freak[ing] out"); Tr. 1355 (October 25, 2022, treatment note indicating Plaintiff stating, "I'm in the zone with my video game so I can only talk briefly," and reporting "instability improved since resumption of meds"); Tr. 1367 (November 22, 2022, treatment note indicating Plaintiff is "doing well and having a good week"); Tr. 1375 (January 17, 2023, treatment note indicating Plaintiff "reports he is doing well and has been enjoying a new video game which he paid for an early access to"); Tr. 1377 (January 31, 2023, treatment note indicating Plaintiff "reports he is doing

ORDER - 14

well and enjoying a day running errands with his grandma"); Tr. 1380 (March 6, 2023, treatment note indicating the same).

The ALJ also discounted Ms. Gonzalez's opinion as lacking support in the record. Tr. 38-39. For the reasons described above, in the context of Dr. Genthe's opinion, the ALJ did not err by discounting Ms. Gonzalez's opinion on this ground

### 4. *Drs. Eather and Kraft*

Dr. Eather and Dr. Kraft served as state-agency psychological consultants who reviewed Plaintiff's medical records. Tr. 186-93, 201-206. Dr. Eather opined, among other things, that Plaintiff "has the ability to perform simple repetitive tasks within customary expectations for an 8hr/day and 40/hr per week schedule, within customary tolerances with typically scheduled breaks, bathroom access, etc… for typical increments considering typical breaks… and persist for same to be able to maintain and sustain FT work." Tr. 191. Dr. Kraft endorsed this opinion. Tr. 204. The ALJ found these opinions persuasive, explaining that they were consistent with the objective medical evidence and the record as a whole. Tr. 40-43. An ALJ is not required to provide reasons in support of incorporating a medical opinion into the residual functional capacity determination, *see Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010), and the Court discerns no error in the ALJ's acceptance of these opinions.

ORDER - 15

### B. Plaintiff's Testimony

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims. ECF No. 10 at 9-16. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks and citation omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quotation marks and citation omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation and footnote omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as*

ORDER - 16

*amended* (Apr. 9, 1996)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ offered numerous reasons to discount Plaintiff's testimony, at least three of which the Court finds well supported. First, the ALJ discounted Plaintiff's

ORDER - 17

testimony as inconsistent with the objective medical evidence, to include mental status examinations.  Tr. 29-33.  "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).  The ALJ did not err and relied on substantial evidence—including, as discussed above, a series of mental status examinations—by discounting Plaintiff's testimony on this ground.

Next, the ALJ discounted Plaintiff's testimony as inconsistent with Plaintiff's improvement with treatment.  Tr. 31.  "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."  *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (citing 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1)).  Substantial evidence supports this ground.  *See, e.g.*, Tr. 1424 (August 8, 2023, treatment note indicating Plaintiff "doing well and has been having a busy week with home projects"); Tr. 1426 (August 10, 2023, treatment note indicating Plaintiff reports "doing well but is currently busy playing his video game" and "has been sleeping well this week especially last night and continues to take his medications consistently as prescribed"); Tr. 1429 (August 17, 2023, treatment note indicating Plaintiff "doing better," "[g]aming a lot," and "feel[s] like the meds are working perfect where they are at").  The ALJ thus reasonably relied on this ground to discount Plaintiff's testimony.

ORDER - 18

Finally, the ALJ discounted Plaintiff's testimony as inconsistent with his activities, reasoning that Plaintiff reported "high-functioning activities of daily living that demonstrate his functioning has not substantially decreased."  Tr. 33. The ALJ found that "[t]he record shows he cares for pets, can perform personal care without assistance, prepares his own meals, goes outside daily, goes out alone, drives, completes household chores, runs errands and shops in stores during the day, spends time with friends, plays video games, and utilizes social media applications."  Tr. 33.  An ALJ may consider activities that contradict a claimant's testimony.  *Molina*, 674 F.3d at 1112-13.  Substantial evidence supports this finding, as discussed above.  *See also, e.g.*, Tr. 727 (August 12, 2020, treatment note indicating Plaintiff discussed "walking, running errands, and his new friendships online"); Tr. 792 (October 7, 2020, treatment note indicating Plaintiff "reports doing well and out running errands with his grandma"); Tr. 1001 (March 15, 2021, treatment note indicating Plaintiff "reports he is doing well and is currently ready to go to Walmart.  [Plaintiff] reports having a good weekend spent with friends and helping around their home"); Tr. 1003 (March 23, 2021, treatment note indicating Plaintiff "reports he is doing well and had a good weekend relaxing and playing video games").  On this record, the ALJ reasonably concluded that Plaintiff's activities were inconsistent with his allegations.

ORDER - 19

Because the ALJ gave at least three valid reasons for discounting Plaintiff's testimony, the Court need not address the balance of the ALJ's stated reasons for discounting Plaintiff's testimony.  Any inclusion of erroneous reasons was inconsequential and therefore harmless.  *See Carmickle*, 533 F.3d at 1162.

**C. Step Two**

Plaintiff argues the ALJ erred at step two by not assessing certain medical impairments as not severe.  ECF No. 10 at 4-5.  However, in determining Plaintiff's RFC, the ALJ thoroughly addressed Plaintiff's impairments and complaints.  Tr. 22-45.  "[Step two] is not meant to identify the impairments that should be taken into account when determining the RFC.  In fact, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe.  The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered severe or not."  *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (simplified).  Because the ALJ discussed and rejected Plaintiff's impairments and complaints as disabling in determining Plaintiff's RFC, any error at step two was harmless.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

**D. Step Five**

At step five, the Commissioner bears the burden of establishing that the claimant can perform other work existing in significant numbers in the national

ORDER - 20

economy.  20 C.F.R. § 416.960(c)(2).  The Commissioner may satisfy this burden through vocational expert testimony identifying representative occupations that a person with the claimant's residual functional capacity can perform.  *Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020).

Where a claimant challenges the vocational expert's job-number testimony by submitting competing evidence, the ALJ must determine whether that evidence is "significant and probative."  *Wischmann v. Kijakazi*, 68 F.4th 498, 506 (9th Cir. 2023).  If so, the ALJ must both address the discrepancy and resolve the inconsistency between the competing job-number estimates.  *Id.*; *see also White v. Kijakazi*, 44 F.4th 828, 837 (9th Cir. 2022); *Buck*, 869 F.3d at 1052.  The Ninth Circuit recently reaffirmed this framework, holding that where a claimant presents significant and probative countervailing job-number evidence, the ALJ must engage with that evidence and resolve the conflict in the record.  *Powley v. Bisignano*, No. 24-4063, 2026 WL 760230, at \*2, \*5-\*6 (9th Cir. Mar. 18, 2026)

Here, the ALJ relied on vocational expert testimony from the prior administrative proceedings to conclude that Plaintiff could perform work existing in significant numbers in the national economy.  Tr. 46.  The ALJ did not obtain updated vocational testimony at the subsequent hearing.  Plaintiff, however, submitted competing job-number evidence derived from Job Browser Pro

ORDER - 21

identifying substantially lower numbers for the same representative occupations. Tr. 59-61.  Plaintiff's evidence was tied to the same Dictionary of Occupational Titles ("DOT") codes identified by the vocational expert and relied on a source recognized as commonly used in vocational analysis.  *See White*, 44 F.4th at 837 (recognizing Job Browser Pro as a source "frequently relied on by the SSA").  Evidence produced using such sources and methodologies is probative.  *Powley*, 2026 WL 760230, at *6-*7

The discrepancy between the vocational expert's testimony and Plaintiff's competing job-number estimates is also significant.  *Compare* Tr. 46 (over 200,000 jobs, derived from 2019 VE testimony), *with* Tr. 61 (21,508 jobs, derived by Plaintiff from Job Browser Pro in 2022).  In this context, significance turns on the magnitude of the difference between the competing estimates.  *Powley*, 2026 WL 760230, at *8.  Plaintiff's competing evidence reflects a materially different estimate of the number of jobs available for the identified occupations, creating a meaningful conflict in the record.

Because Plaintiff submitted evidence that is both significant and probative, the ALJ was required to do more than simply rely on the prior vocational expert testimony.  The ALJ was obligated to engage with the conflicting evidence and provide a reasoned explanation resolving the inconsistency.  *Id*.  The ALJ did not do so.  The decision contains no discussion of Plaintiff's competing job-number

ORDER - 22

evidence and does not reconcile the discrepancy between the competing estimates. Nor does the decision explain why the vocational expert's numbers were accepted in light of Plaintiff's contrary evidence derived from an accepted methodology. Instead, the ALJ relied on the prior vocational testimony without addressing the conflict presented in the record.  *See* Tr. 46.

This was legal error.  As the Ninth Circuit recently clarified, when presented with significant and probative evidence, it is insufficient for an ALJ to simply credit vocational expert testimony based on the expert's experience or the fact that the testimony was given in response to a hypothetical.  *Powley*, 2026 WL 760230, at *8 (noting such reasoning "d[oes] nothing to address the conflicts between the data."").  Where, as here, the record contains conflicting job number evidence derived from accepted sources, the ALJ must meaningfully confront that evidence and resolve the inconsistency.  *Id*.

Because the ALJ failed to address and resolve the discrepancy between the vocational expert's job number testimony and Plaintiff's competing evidence, the step five finding is not supported by substantial evidence.  Remand is required for further administrative proceedings so that the ALJ may properly evaluate the conflicting job number evidence and determine whether work exists in significant numbers in the national economy that Plaintiff can perform.

ORDER - 23

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Brief, **ECF No. 10**, is **GRANTED**.

2. Defendant's Brief, **ECF No. 18**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED May 5, 2026.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 24